NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200458-U

NO. 4-20-0458

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 26, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| FRANCES BIXLER and MARY PERKINS, | ) | Appeal from the |
|     Plaintiffs-Appellants, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| ILLINOIS STATE BOARD OF ELECTIONS; | ) | No. 20MR775 |
| STATE OFFICERS ELECTORAL BOARD; | ) | |
| WILLIAM J. CADIGAN, WILLIAM R. HAINE, | ) | Honorable |
| LAURA K. DONAHUE, IAN K. LINNABARY, | ) | Adam Giganti, |
| WILLIAM J. McGUFFAGE, KATHERINE S. | ) | Judge Presiding. |
| O'BRIEN, CHARLES W. SCHOLZ, and | ) | |
| CASANDRA B. WATSON, all in Their Official | ) | |
| Capacities as Members of the Duly Constituted | ) | |
| State Officers Electoral Board; JOHN A. | ) | |
| CUNNINGHAM, not Individually but in his | ) | |
| Capacity as Kane County Clerk; KAREN | ) | |
| YARBROUGH, not Individually but in Her | ) | |
| Capacity as Cook County Clerk; JEAN | ) | |
| KACZMAREK, not Individually but in Her | ) | |
| Capacity as DuPage County Clerk; ROBIN M. | ) | |
| O'CONNOR, not Individually but in Her Capacity | ) | |
| As Lake County Clerk; JOSEPH J. TIRIO, not | ) | |
| Individually but in His Capacity as McHenry | ) | |
| County Clerk and BILL REDPATH, | ) | |
|     Defendants-Appellants. | ) | |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Steigmann        in the judgment.

**ORDER**

¶ 1    *Held*:    The public-interest exception to the mootness doctrine does not warrant review of
the issues raised in the appeal.

¶ 2        Plaintiffs, Frances Bixler and Mary Perkins, seek judicial relief from the order of the Illinois State Board of Elections (the Board) overruling their objections to the nominating petition and papers filed by defendant, William Redpath, who sought designation as a Libertarian Party candidate in the November 2020 general election. The Board had certified Redpath for the ballot upon finding, in part, the preliminary injunction ordered in *Libertarian Party of Illinois v. Pritzker*, 455 F. Supp. 3d 738 (2020), which enjoined enforcement of provisions of the Election Code (10 ILCS 5/10-1, *et seq.* (West 2018)) due to the coronavirus (COVID-19) pandemic, applied and Redpath's filings complied with the Election Code as modified by the injunction. Plaintiffs sought relief in the Circuit Court of Sangamon County, which affirmed the Board's decision.

¶ 3        Plaintiffs appeal, arguing (1) the district court, in *Pritzker*, lacked authority to enter the preliminary injunction; (2) the *Pritzker* injunction had no collateral effect on plaintiffs' claims; (3) a voter who cast a ballot in the March 2020 primary election for either established political party was ineligible to sign a nominating petition for a candidate of a new political party in the same election cycle; and (4) Redpath's nominating petition and papers fail to comply with the Election Code. We find the issues raised moot and dismiss the appeal.

¶ 4                                    I. BACKGROUND

¶ 5        On March 20, 2020, the governor of Illinois, JB Pritzker, responded to the outbreak of COVID-19 by declaring the State of Illinois a disaster area and entering a stay-at-home order. Executive Order 2020-10 (Mar. 20, 2020). Under this order, individuals living in Illinois were authorized to leave their homes only for essential activities, essential governmental functions, or essential business. *Id.* Even when engaging in these essential activities, social

distancing of at least six feet from others was required. *Id.*

¶ 6　　　　When the stay-at-home order was entered, candidates were preparing for the November 3, 2020, election. A key part of that process was for candidates to obtain signatures from qualified voters to have their names placed on the ballots. Under the Election Code, these signatures could only be obtained through in-person contact (10 ILCS 5/10-4 (West 2018)).

¶ 7　　　　In April 2020, the Libertarian Party of Illinois, the Illinois Green Party, among others including Redpath, filed a lawsuit in the Northern District of Illinois seeking to enjoin or modify the in-person signature collection and witness requirements for independent and third-party candidates seeking to qualify for the Illinois November 3, 2020, election. *Libertarian Party of Illinois v. Pritzker*, 455 F. Supp. 3d 738, 740 (2020). For that election, both the Libertarian Party of Illinois and the Illinois Green Party, "new" political parties, faced hurdles higher than those faced by the democrat and republican parties, "established" political parties. *Id.* One example of a difference was in the collection of voter signatures. *Id.* at 740-41. As an example, an Illinois candidate for the United States Senate from a new political party needs at least 25,000 signatures to get on the ballot while a member of an established political party needs only 5,000 to 10,000 signatures. *Id.* at 741. Each signature must be made in person and notarized. *Id.* (citing 10 ILCS 5/10-4 (West 2020)). The plaintiffs in *Pritzker* argued Illinois' signature requirements on new political parties, under the circumstances of the COVID-19 pandemic, violated their rights under the First and Fourteenth Amendments. *Id.* at 742.

¶ 8　　　　Ultimately, the parties to the lawsuit, including the Board, proposed an order that would provide relief during the COVID-19 pandemic. *Id.* The court was satisfied the agreed order would "ameliorate Plaintiffs' difficulty meeting the statutory signature requirement due to

the COVID-19 restrictions—thereby addressing the constitutional questions raised by Plaintiffs' motion ***--while accommodating the State's legitimate interest in ensuring that only parties with a measurable modicum of public support will gain access to the 2020 general election ballot." *Id.* The court determined the agreed order balanced the State's interests in protecting the integrity of the election, "while accommodating the significant restrictions on new party and independent candidates' ability to collect signatures in light of the unprecedented limitations on public gatherings required to reduce the spread of COVID-19." *Id.* at 745-46.

¶ 9        Unfortunately, although this appeal centers on the propriety of the agreed-upon order and the district court's decision to approve the order, it does not appear a copy of that preliminary injunction is in the record. When the parties on both sides of this appeal discuss the injunction, they cite the district court's ruling in *Pritzker*, which only generally discusses it.

¶ 10        Plaintiffs' briefing and *Pritzker* provide some indication of the terms of the injunctive relief granted. According to plaintiffs, the preliminary injunction "enjoin[s] the wet[-]signature requirement, the in-person circulation requirement, and the circulator's affidavit requirement[, reduces] the signature requirement from 5% to 0.05% for new party candidates, and modif[ies] the filing period to July 31, 2020 to August 7, 2020 [later revised by separate order to July 13, 2020 to July 20, 2020]." *Pritzker* shows the agreed order permits "ballot access for previously-qualifying new party and independent candidates[] and loosen[s] the statutory signature requirements for other new party and independent candidates." *Id.* at 744.

¶ 11        The Seventh Circuit's decision affirming the *Pritzker* preliminary injunction gives more detail on the terms of the preliminary injunction. *Libertarian Party of Illinois v. Cadigan*, 824 Fed. Appx. 415, 415-16 (7th Cir. 2020). In that decision, the Seventh Circuit summarized

- 4 -

the "four main points" of the preliminary injunction, as follows:

> "(1) Plaintiff political parties are permitted to nominate candidates without petitions in any race in which they had nominated a candidate in either 2016 or 2018, and the three individual candidates are permitted to appear on the ballot for any office they qualified for in 2016 or 2018 without a petition;
>
> (2) New political party and independent candidates not subject to item (1) are required to file nomination petitions signed by not less than 10% of the statutory minimum number required;
>
> (3) Petition signers are permitted to affix their signatures to a petition electronically, by using a computer mouse, a stylus, or their finger; and
>
> (4) The statutory petition filing deadline is moved from June 22, 2020, to August 7, 2020." *Id.* at 417.

*Cadigan* further establishes the district court reset the date for the candidate nomination and petition filings to July 20. *Id.* We note, in *Cadigan*, the Board appealed the preliminary injunction to the Seventh Circuit. That court found no abuse of discretion in the district court's entry of the preliminary injunction as, in part, the Board agreed initially the preliminary injunction was proper. *Id.* at 415-16 ("On this record—and especially against the positions the Board has taken in the litigation—we see nothing close to an abuse of discretion by the district court.")

¶ 12        On July 19, 2020, Redpath filed his nominating papers and petition for

designation as the Libertarian Party candidate for election to the office of the United States Representative for the 6th congressional district of the State of Illinois at the November 3, 2020, election. Redpath provided 3,106 signatures in support of his candidacy.

¶ 13        One week later, plaintiffs in this case, Frances Bixler and Mary Perkins, filed an objection to Redpath's nominating papers and nominating petition, asserting multiple failures to comply with the Election Code. Plaintiffs alleged multiple deficiencies in Redpath's petition and nominating papers. Plaintiffs maintained Redpath failed to file the minimum number of signatures required by the Election Code, many signatures were not from qualified voters, the petition was untimely, and Redpath failed to provide a notarized affidavit of a circulator.

¶ 14        On August 21, 2020, the Board overruled plaintiffs' objections and certified Redpath's name for the November 3, 2020, general-election ballot. The Board did so upon finding, in part, the following: (1) 2,371 of the 3,106 signatures provided by Redpath in support of his nomination were valid; (2) although Plaintiffs were not named parties in the *Pritzker* case the preliminary injunction order bound the Board's actions in this proceeding; and (3) Redpath filed a number of signatures exceeding the amount required by Article 10 of the Election Code as modified by the district court's preliminary injunction in *Pritzker*.

¶ 15        Plaintiffs sought judicial review of the Board's decision in the Sangamon County Circuit Court. On September 11, 2020, the circuit court affirmed the Board's decision. This appeal followed.

¶ 16        In their appeal, plaintiffs sought not only a reversal of the circuit court's decision but also expedited review of their claims. Redpath opposed the motion. On October 2, 2020, we denied plaintiffs' request to place the appeal on an accelerated docket.

¶ 17	In the November 2020 general election, Redpath did not prevail. He received 7,079 votes or 1.75% of the votes. The democratic candidate who prevailed received 213,777 votes, while the republican candidate received 183,891 votes. https://www.elections.il.gov/ElectionOperations/ElectionVoteTotals.aspx?ID=LRZfHKfi8HQ%3d&OfficeType=%2brBqro%2b%2bHTUkQvv7Q1tDdQ%3d%3d&T=637596011984001893 (last visited on June 18, 2021).

¶ 18	II. ANALYSIS

¶ 19	On appeal, plaintiffs contend Redpath's name should not have been on the ballot as the nominating petition and papers do not comply with the Election Code. Plaintiffs argue four key issues: (1) the preliminary injunction in *Pritzker* was improper as it exceeded the district court's authority; (2) the *Pritzker* preliminary injunction is a settlement agreement with no collateral effect on the objectors; (3) a voter who cast a ballot in the March 2020 primary election for either established political party was ineligible to sign a nominating petition for a candidate of a new political party in the same election cycle; and (4) Redpath's nominating petition and papers do not contain the minimum number of signatures, are not supported by circulator's affidavits, and were not timely filed under the law.

¶ 20	In response, Redpath argues, both in a motion and in his appellee brief, the appeal should be dismissed as the issues are moot. Redpath emphasizes the injunctive relief granted by the district court applied only to the November 2020 election and does not apply to future elections. Redpath further emphasizes any decision here would have no practical effect on the controversy.

¶ 21	We agree with Redpath the issues presented are moot. When events make it

impossible for the court of review to render effectual relief or if no actual controversy exists, an appeal is moot. *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291, 835 N.E.2d 797, 799 (2005). Illinois courts, as a general rule, do not decide moot questions or render advisory opinions. See *Commonwealth Edison Co. v. Illinois Commerce Commission*, 2016 IL 118129, ¶ 10, 51 N.E.3d 788. This general rule "stems from the concern that parties to a resolved dispute lack a sufficient personal stake in the outcome to assure the adversarial relationship" necessary for a sharper presentation of issues to allow the courts to resolve difficult questions. *Peters-Farrell*, 216 Ill. 2d at 291. Here, no relief may be granted as the preliminary injunction has expired, the election has occurred, and Redpath did not win the election.

¶ 22    Plaintiffs counter by arguing, even if moot, this court should consider the appeal as a matter of equity or under the public-interest exception. As to the plaintiffs' first argument, plaintiffs contend Redpath's conduct prevented the court's timely consideration of the appeal. Plaintiffs filed notice of appeal on September 18, 2020, over six weeks before the general election, and sought expedited review, but Redpath opposed expedited review in a response to the motion. On appeal, plaintiffs ask the court to "not condone" this strategy of delaying the appeal so the issues may be rendered moot.

¶ 23    Plaintiffs, however, have cited no authority for the proposition a response to a motion, properly filed, may be a basis for reviewing an otherwise moot question. This argument is, therefore, forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *Vancura v. Katris*, 238 Ill. 2d 352, 370, 939 N.E.2d 328, 340 (2010) ("An issue that is merely listed or included in a vague allegation of error is not argued and will not satisfy the

- 8 -

requirements of the rule.").

¶ 24        Second, plaintiffs contend, even if the issue is moot, we may consider the appeal under the public-interest exception to the mootness doctrine. Plaintiffs contend the issue is of public nature, an authoritative determination is desirable to guide public officers, and the issue is likely to recur. Plaintiffs emphasize the COVID-19 pandemic is not over and, as of April 2, 2021, only 17.75% of Illinois were fully vaccinated. Plaintiffs further highlight, as of the same date, Governor Pritzker extended his COVID-19 disaster declaration for the State of Illinois.

¶ 25        Under the public-interest exception, an otherwise moot question may be reviewed "when the magnitude or immediacy of the interests involved warrants action by the court." *Commonwealth Edison Co. v. Illinois Commerce Commission*, 2016 IL 118129, ¶ 12, 51 N.E.3d 788. The exception applies only when the following three requirements are established: "(1) the question presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur." *Id.* (quoting *In re Shelby R.*, 2013 IL 114994, ¶ 16, 995 N.E.2d 990). We may not invoke the public-interest exception if just one of the criteria is not established. See *Commonwealth Edison*, 2016 IL 118129, ¶ 13.

¶ 26        The bulk of plaintiffs' appeal concerns the propriety of the preliminary injunction. Of the four key issues, three turn on the question of whether the preliminary injunction, directed toward the November 2020 election and created to address the unprecedent circumstances of the COVID-19 pandemic, properly restricts application of the Election Code: (1) the district court exceeded its authority by entering the preliminary injunction order; (2) the district court's preliminary injunction is a settlement agreement with no collateral effect on the objectors; and

(3) Redpath's nominating petition and papers do not contain the minimum number of signatures, are not supported by circulator's affidavits, and were not timely filed under the law as required by the Election Code.

¶ 27    Without addressing the other two factors, we find the issue is not likely to recur. In making their argument, plaintiffs contend "[i]t is entirely foreseeable that candidates and election authorities will continue to seek modification of or relief from the provisions of the Election Code during the ongoing pendency of the pandemic" and "entirely conceivable that mitigations which have already lasted nearly fourteen (14) months could be in place for at least five (5) more" when the new general election begins and nominating petition signature collection commences in September 2021. "[E]ntirely foreseeable" and "entirely conceivable" do not equate to "likely to recur." As plaintiffs' own words indicate, there is simply insufficient evidence to show the restrictions resulting from the COVID-19 pandemic and affecting candidates' ability to gather signatures is likely to recur. Since the date Plaintiffs filed their reply brief, April 2, 2021, the pandemic landscape has changed significantly. Nearly 46% of the population in Illinois is now fully vaccinated.

https://www.dph.illinois.gov/covid19/vaccinedata?county=Illinois (last viewed June 16, 2021). Over 55% of Illinoisans over the age of 18, those eligible to vote and sign nominating petitions, are fully vaccinated. *Id.* In addition, as of June 11, 2021, Illinois moved into Phase 5 of its coronavirus reopening plan, during which capacity limits for businesses and large-scale events were lifted. Executive Order 2021-12 (June 11, 2021); (

https://www.nbcchicago.com/news/coronavirus/you-did-it-illinois-pritzker-says-state-will-move-to-phase-t-friday-making-reopening-official/2529876/ (last viewed June 16, 2021). While this

- 10 -

court cannot predict the future, these facts counter any argument the unprecedented circumstances presented by the COVID-19 pandemic for the November 3, 2020, general election are likely to recur. The public-interest exception does not apply.

¶ 28　　　　The remaining issue in Plaintiffs' appeal, whether a voter who cast a ballot in the primary election for either the Republican or Democrat political party is ineligible to sign a nominating petition for a candidate of a new political party, does not turn on the propriety of the preliminary injunction and the circumstances of the COVID-19 pandemic. Plaintiffs contend the question as to the validity of signatures is likely to recur and otherwise falls within the public-interest exception to the mootness doctrine.

¶ 29　　　　For this argument, Plaintiffs have not, however, established the second requirement for the public-interest exception: "an authoritative determination of the question is desirable for the future guidance of public officers" (*In re Shelby R.*, 2013 IL 114994, ¶ 16, 995 N.E.2d 990). Under this requirement, it is not sufficient that the sought-after authoritative determination could be of value to litigants in the future. See *Commonwealth Edison*, 2016 IL 118129, ¶ 15. Instead, the question of whether there is a need for authoritative determination turns on the question of "whether the law is in disarray or conflicting precedent exists." *Id.* ¶ 16. In matters of first impression, there is no conflict or disarray and this requirement for the public-interest exception is not satisfied. *Id.* ¶¶ 16-17.

¶ 30　　　　In this case, plaintiffs expressly state this is a matter of first impression: "the issue of whether the signatures of established party primary voters may validly be counted on a new party candidate's nominating petition in the same election cycle appears to be one of first impression, at least in the appellate court." This contention concedes there is no conflict or

disarray in the law. The second requirement for the public-interest exception is not met. See *id.* ¶ 17. This issue is moot.

¶ 31          After this court issued the original Rule 23 order dismissing this appeal, the State, which did not file an appellate brief in this matter, filed a motion to correct that order. Specifically, the State asks this court to eliminate or modify paragraph 9, asserting, contrary to statements in paragraph 9, the record includes a copy of the preliminary injunction. The State also cites the pages of the record where that copy may be found.

¶ 32          While the State is correct, the preliminary-injunction order is in the record, we deny the State's request to eliminate or modify paragraph 9. In paragraph 9, we concluded "it does not appear a copy of that preliminary injunction is in the record." The basis for that conclusion, expressed in the following sentence, was that the parties who filed briefs on the appeal failed to provide a citation to that order. Not only did the parties fail to provide a citation to the preliminary-injunction order, but also the parties directed this court to pages that did not include it (C1386-1396). The preliminary-injunction order was also not listed in the table of contents to the common-law record. In that table, the first page number of the digital record where the order may be found (C805) falls within the range of pages of C278-C811 under the heading of "Answer Record- Volume 1." Moreover, in the briefing for this case, C805 was not once cited. The failure to provide "appropriate references to the pages of the record" violates the briefing requirements of Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), and we remind the State we need "not sift through the record" to find facts supporting the parties' arguments. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 6, 960 N.E.2d 1226, 1228.

¶ 33          We last note the fact that the order appears in the record has no bearing on the

outcome of the case. No party argues the contrary. The issues remain moot.

¶ 34                                  III. CONCLUSION

¶ 35          We dismiss the appeal as moot.

¶ 36          Appeal dismissed.